Hillsborough, July 1, 1952. } No. 4120.

### PETITION OF LEON KEYSER, INC.

*Sulloway, Piper, Jones, Hollis & Godfrey* and *Irving H. Soden* (*Mr. Soden* orally), for Aetna Casualty & Surety Company.

*Robert P. Booth*, Receiver (by brief and orally), *pro se.*

*Devine & Millimet* (*Mr. Millimet* orally), for Joseph F. Carew, Inc.

*J. Morton Rosenblum* (by brief and orally), for Architectural Stone Co., Inc.

*Charles B. McLaughlin* (by brief and orally), for H. J. Touhy & Son and United Plate and Window Glass Company.

*Winthrop Wadleigh* for Duracrete Block Company, Inc.

*John W. King* for P. H. McGranahan Co., Inc.

DUNCAN, J. The surety takes the position that the bonds which it executed with the insolvent corporation are statutory bonds, and that it is obligated to pay only those creditors who gave the notice required by the statute. R. L., c. 264, s. 27 (Laws 1943, c. 182). It contends that the statute should be read into the bonds, and that any undertakings which are broader than those required by the statute or conflict therewith, should be limited accordingly. With this view we do not agree. In 43 Am. Jur. 888, "Public Works and Contracts," s. 146, it is stated that by the weight of authority such a "bond may be conditioned more broadly than the statute requires, and if . . . voluntarily given in consideration of the contract, its extrastatutory provisions may be enforced as a valid common-law obligation." See also, *Western Steel Casting Co.* v. *Edland,* 187 Wash. 666, 669; *Hogan* v. *Walsh & Wells, Inc.,* 180 Tenn. 670; *Mass. Bonding &c. Ins. Co.* v. *State,* 82 Ind. App. 377; anno. 18 A. L. R. 1227. There is no indication in our statute that this principle should not be applied in this jurisdiction. The statute does not prohibit the taking of bonds broader than the statute requires, nor is any intention shown to make the prescribed type of bond exclusive.

The statute in its original form (Laws 1927, c. 88), provided for a bond conditioned upon the payment of all who would have liens under sections 15-24 of chapter 217, P. L., now chapter 264, Revised Laws. It was designed "to furnish an alternative security to lienors, in general more practically adapted to protect them and at the same time to save the state or municipality from annoyance." *Guard Rail Erectors* v. *Company,* 86 N. H. 349, 350. Accordingly, it was held that enforcement of a lien by notice and attachment as required by statute in other cases (R. L., c. 264, ss. 16, 20) was unnecessary in order to have recourse to the bond. *Ib.* See also, *American Bridge Co.* v. *Company,* 87 N. H. 62. Thereafter the

statute was amended (Laws 1943, chapter 182; Laws 1949, chapter 71), to define with more particularity persons entitled to the protection of the required bond (*s. 26*), to provide for notice (*s. 27*), and for hearing in a single proceeding of all claims properly filed (*s. 27a*). The remedy thus provided does not purport to be a remedy for the enforcement of all types of bonds but only for the bonds required by the statute. Common law liability is not abolished. See *Toner* v. *Long*, 79 N. H. 458. While the statute defines the conditions which a bond shall contain, it does not prohibit the incorporation of additional conditions. The recent decision in *Therrien* v. *Company*, 97 N. H. 180, establishes that the statutory requirement of notice to the principal and surety is one which may be waived by them. In other respects so far as it is applicable, the statute may be thought to be mandatory.

The bond executed by the surety in favor of the Claremont School District recites a purpose "to comply in full" with the statute. The language of the bond goes beyond the requirements of the statute and guarantees "faithful performance of the Contract" by the principal and indemnifies the district against loss through his default and any expenditure to make the default good. With respect to persons furnishing labor and materials the express provisions of the bond are narrower than the requirements of the statute, since they are in favor only of "persons who have contracts directly with the Principal," while the statute requires that the bond guarantee payment "by the contractors and subcontractors for all labor performed or furnished, [and] for all equipment hired . . ." (*s. 26*).

The bond is interpreted to afford protection to the classes of persons contemplated by the statute, as well as to afford to the district and others the rights expressly given by the bond. The statute is to be read into the bond for the purpose of affording rights to persons intended by the Legislature to be protected (*Baumann* v. *West Allis*, 187 Wis. 506, 525, 526), especially when an intent to comply with the statute is evidenced by the bond (anno. 89 A. L. R. 446, 451); but no reason is seen to deprive others of the protection which the parties to the bond intended and provided for, and which the statute does not expressly prohibit.

The question of the necessity for compliance with the statute in enforcement of rights under the bond is presented. The bond provides that persons having contracts directly with the principal "shall have a direct right of action against the Principal and Surety

under this obligation." In the absence of such a provision, and of any controlling statute, persons entitled to benefits under the bond would be entitled to enforce their rights by bill in equity. *Toner* v. *Long,* 79 N. H. 458, *supra.* The effect of the provision for a direct right of action is to give to those in whose favor it runs, the right to enforce their claims by an action at law, if no statute requires otherwise. *Guard Rail Erectors* v. *Company, supra.* The statute in its present form provides a remedy by notice and petition (*ss.* 27, 27a). But by giving "a direct right of action," to persons having contracts directly with the contractor, and by further provision that no such action shall be brought "after two years from the day on which the final payment under the Contract falls due," the principal and surety have waived the statutory requirements that notice shall be given within ninety days after the claimant ceases to perform labor or furnish material, and that a petition shall be filed within one year (*ss.* 27, 27a, *supra*). *Therrien* v. *Company, supra.* Consequently creditors who come within the condition of the bond may maintain their actions without prior statutory notice.

Such a waiver cannot be implied however with respect to persons who do not have contracts directly with the principal. As previously indicated, their rights depend upon the statute. If they accept its benefits, they likewise become subject to its burdens. The statute creates their rights, and they may not be enforced at common law (*Mason* v. *Company,* 85 N. H. 487), but only by the means specified by the statute. Such creditors are accordingly remitted to the statutory procedure, including notice and petition, within the times limited.

Similar principles govern the rights of the parties under the bond furnished to secure performance of the Manchester Water Works contract. The condition of that bond more closely follows the statutory requirement, and provides for payment of "all persons who have furnished labor or material for use in or about the improvement." Such persons are given direct rights of action under the bond "subject to the Owner's priority," which is not involved so far as appears. They may maintain their actions apart from the statutory requirements as to procedure. If there are creditors who do not fall within the classes expressly protected by the bond, but who are entitled to protection under the statute, as for example persons who rented equipment, or furnished labor or parts for repair of equipment (*s.* 26), they are required to establish their rights

in accordance with the statutory procedure. Subject to the requirements with respect to enforcement of their claims which are contained in the applicable provisions of the bond or statute as the case may be, all creditors entitled to protection under either are entitled to payment in full by the surety.

The argument is made on behalf of certain creditors that the bond in favor of Manchester Water Works is not a statutory bond. Reliance is placed on the holding in *Shea* v. *Manchester*, 89 N. H. 547, that the sale of water is a proprietary and not a governmental function. See also, *Whitefield &c. District* v. *Bobst*, 93 N. H. 229, 231. It is pointed out that although the bond was written after the Claremont bond, it contains no reference to the statute. The fact remains that the water works is not an entity but an enterprise conducted by a department of the city of Manchester. Laws 1871, chapter 70; Laws 1935, chapter 323. See *Chicopee Mfg. Co.* v. *Manchester*, 97 N. H. 109. The city is plainly a political subdivision of the state within the meaning of the statute (*s.* 26). Similarly the construction undertaken by the contractor was construction of a "public building" within the act, title to which is doubtless in the city. See *Title Guaranty & Trust Co.* v. *Crane Co.*, 219 U. S. 24. The application of the statute cannot be seriously doubted, and is not affected by the lack of reference to it in the bond. *Baumann* v. *West Allis*, 187 Wis. 506, *supra*.

The other questions transferred relate to the surety's right to reimbursement out of the funds in the hands of the receiver, on account of payments made by the surety to claimants under the bond; and to the relative rights of the surety, the receiver and general creditors arising out of the receivership or otherwise, in assets of the insolvent.

With respect to funds received from the obligees of the Claremont and Manchester bonds, it is plain, and the surety concedes, that its rights are subject to those of the class of creditors intended to be benefited by the bonds. *American Surety Company* v. *Sampsell*, 327 U. S. 269; *American Surety Co.* v. *Electric Co.*, 296 U. S. 133; anno. 80 L. Ed. 112, 113.

The relative rights of the surety, the receiver and general creditors cannot well be determined upon the allegations of the surety's petition. It incorporates as an exhibit a contract between the receiver and the surety, approved by the Trial Court, providing for completion by the receiver of specified contracts of the insolvent in addition to the Claremont and Manchester contracts which recite

that it is to the advantage of the surety that these contracts be so completed. The surety agrees therein to advance $5,000 to the receiver forthwith, in partial performance of an undertaking to provide sufficient funds to complete the specified contracts. The contract also contains stipulations relating to the disposition of "contract balances in the hands of said Receiver."

The nature of the interest of the surety in contracts other than those with the Claremont School District and the Manchester Water Works has not been disclosed. No general creditors have appeared before us unless they may be said to be represented by the receiver. When their claims arose and whether they claim priority over the surety's rights by subrogation or by assignment made by the principal is not stated.

We are told that claims paid or admittedly owing by the surety under the two bonds herein considered will exceed the amounts paid to the receiver on account of the contracts secured thereby. We are told that other contracts completed by the receiver will produce a profit and that one at least will probably result in loss. Whether the claims of general creditors arise from these contracts or otherwise does not appear. On such a record, it would hardly be possible to determine undisclosed rights, were it desirable to undertake to do so.

Until the facts with respect to any conflicting equities which may arise out of these interrelated transactions are more definitely established, relative priorities cannot well be determined by this court.

*Case discharged.*

GOODNOW, J., did not sit: the others concurred.